[Cite as *State v. Robinson*, 2026-Ohio-2980.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## LAKE COUNTY

| | |
|---|---|
| STATE OF OHIO, | CASE NO. 2025-L-133 |
| Plaintiff-Appellee, | |
| - vs - | Criminal Appeal from the Court of Common Pleas |
| LORENZO L. ROBINSON, | Trial Court No. 2025 CR 000180 |
| Defendant-Appellant. | |

## OPINION AND JUDGMENT ENTRY

Decided: August 3, 2026
Judgment: Affirmed

*Charles E. Coulson*, Lake County Prosecutor, *Teri R. Daniel*, and *Joshua M. Knauf*, Assistant Prosecutors, Lake County Administration Building, 105 Main Street, P.O. Box 490, Painesville, OH 44077 (For Plaintiff-Appellee).

*Cory R. Hinton*, Hanahan & Hinton, L.L.C., 7351 Center Street, Suite 1, Mentor, OH 44060 (For Defendant-Appellant).

ROBERT J. PATTON, J.

{¶1} Defendant-appellant, Lorenzo Robinson ("Robinson"), appeals from the judgment of the Lake County Court of Common Pleas sentencing him to an aggregate prison term of thirty (30) months in prison as a result of his convictions of having weapons while under disability, a third-degree felony, and possession of cocaine, a fifth-degree felony. For the following reasons, we affirm.

{¶2} On appeal, Robinson raises four assignments of error. Specifically, Robinson asserts that the trial court erred in denying his motion to suppress evidence. Robinson further alleges that the State failed to present sufficient evidence to support his

convictions and that his convictions are against the manifest weight of the evidence. Finally, Robinson asserts that the sentences imposed are contrary to law.

{¶3} Upon review, we conclude that the court below did not err in denying Robinson's motion to suppress. The officer had reasonable suspicion to stop the vehicle to identify whether the driver was the registered owner of the vehicle, who had a suspended license. The officer also had probable cause to stop the vehicle for an equipment violation as the rear brake light was broken. At the time of the stop, two firearms and a bag of suspected marijuana were in plain view in the vehicle. Neither the driver nor the passenger had a valid license. As there was no valid, licensed driver at the time of the stop, the vehicle was impounded and an inventory search of the vehicle was conducted. The inventory search of the vehicle discovered an unspent 10mm round and a digital scale with cocaine residue on the surface of the scale. The inventory search of the vehicle and seizure of the evidence inside were lawful. Accordingly, the trial court did not err when it denied Robinson's motion to suppress.

{¶4} Additionally, Robinson's convictions are not against the manifest weight of the evidence. Thus, they are necessarily supported by sufficient evidence. Lastly, Robinson's sentences are within the statutory guidelines. We conclude that Robinson's sentences are consistent with, and not contrary to, law.

{¶5} As none of Robinson's assignments of error have merit, the judgment of the Lake County Court of Common Pleas is affirmed.

## Substantive and Procedural Facts

{¶6} On March 28, 2025, the Lake County Grand Jury returned a four-count indictment charging Robinson with having weapons while under disability, a third-degree

Case No. 2025-L-133

felony, in violation of R.C. 2923.13(A)(3), with a forfeiture specification pursuant to R.C. 2941.1417 and 2981.04 ("Count 1"); improperly handling firearms in a motor vehicle, a fourth-degree felony, in violation of R.C. 2923.16(B), with a forfeiture specification pursuant to R.C. 2941.1417 and 2981.04 ("Count 2"); possession of cocaine, a fifth-degree felony, in violation of R.C. 2925.11(A), with a forfeiture specification pursuant to R.C. 2941.1417 and 2981.04 ("Count 3"); and illegal use or possession of drug paraphernalia, a fourth-degree misdemeanor, in violation of R.C. 2925.14(C) ("Count 4").[1]

{¶7} On March 6, 2025, the case was consolidated with Painesville Municipal Court Case Nos. 2025 CRB 00138, and 2025 TRD 00440 A-C.

{¶8} On April 4, 2025, Robinson waived the right to be present at arraignment. The trial court entered not guilty pleas to the charges in the indictment and set bond at $300,000 cash/surety or ten percent with the conditions that Robinson have no weapons or firearms, commit no acts of violence, and not violate the law.

{¶9} On April 17, 2025, defense counsel filed a motion to suppress. In the motion, Robinson argued that the officer lacked probable cause and reasonable suspicion to conduct the stop and that the warrantless search of the vehicle was impermissible. The State filed a response in opposition to Robinson's motion to suppress. A hearing on the motion was held on May 30, 2025. The trial court denied the motion at the conclusion of the hearing.[2] Specifically, the trial court determined that the officer had probable cause to stop the vehicle for the equipment violation and to determine whether the driver was the owner of the vehicle. The trial court also concluded that the vehicle was lawfully towed

---

1. Charges were originally filed in the Painesville Municipal Court in Case Nos. 2025 CRA 00137 A-B and bound over to the Lake County Grand Jury on February 10, 2025.
2. The entry denying the motion to suppress was filed on June 2, 2026.

Case No. 2025-L-133

and the inventory search of the vehicle was permissible as an exception to the warrant requirement.

{¶10} Defense counsel moved to modify bond on June 10, 2025. On June 18, 2025, the trial court granted the motion, and bond was modified to $10,000 cash/surety or ten percent. Robinson was released on the bond the same day.

{¶11} On August 27, 2025, the State filed a motion requesting that Stacy Reichert ("Reichert") be called as a court's witness pursuant to Evid.R. 614(A). The trial court granted the motion on the same day.

{¶12} The matter proceeded to trial on September 3, 2025. At trial, Robinson stipulated that he was previously convicted of a felony offense, Possession of Heroin, in Lake County Court of Common Pleas Case No. 14CR000364 in May 2015. Joint Exhibit 1. Additionally, the State dismissed Count 4 of the indictment prior to trial. The following testimony was presented at the trial:

{¶13} At trial, Reichert testified that she currently lives with Robinson and her granddaughter. On January 31, 2025, Reichert testified that Robinson drove her to work in her black Chevrolet Trax sport utility vehicle. Reichert was aware that Robinson did not have a valid driver's license. Reichert also testified that she did not have a valid driver's license as her insurance had lapsed. Reichert testified that she had two firearms in the vehicle on January 31, 2025: a 9mm and 10mm pistol. Reichert purchased both firearms. According to Reichert, Robinson saw the firearms prior to being pulled over. Reichert testified that the 10mm pistol fell out of her pocket and that Robinson had caught the pistol before it fell. According to Reichert, Robinson handed her the 10mm pistol to disassemble. Reichert knew that Robison was not to have the firearms in his possession.

Reichert testified that when the car was pulled over, she had the magazine to the 9mm handgun in her purse and the magazine to the 10mm was with her in the seat.

{¶14} On January 31, 2025, City of Painesville Officer Dallas McCloud was working the nightshift, 8:00 p.m. to 8:00 a.m. As Officer McCloud was patrolling the northern sector of the city in quadrant A. Officer McCloud explained that quadrant A is a high-crime area. At approximately 10:58 p.m., Officer McCloud traveled southbound on Courtland Street near Nebraska Street. Officer McCloud observed a black Chevrolet Trax travelling northbound on Courtland Street. As the vehicles passed each other, Officer McCloud noted that the driver of the Chevrolet Trax was wearing a black face mask and had slouched back in the seat.[3] Officer McCloud could not identify the driver and could not tell if there were any passengers at that time.

{¶15} Officer McCloud testified that he ran the Chevrolet Trax registration through the Law Enforcement Automated Data System ("LEADS") which identified Reichert as the registered owner of the vehicle and indicated that she had a suspended driver's license. Officer McCloud decided to turn around and follow the vehicle. Officer McCloud indicated that the vehicle approached the intersection of Nebraska and Richmond Streets. As the vehicle neared the stop sign, the vehicle's brake lights activated. Officer McCloud observed that the right rear taillight of the vehicle was broken and emitting a bright white light. Officer McCloud then initiated a traffic stop of the vehicle. Officer Cory Whitt ("Officer Whitt") also responded.

{¶16} Officer McCloud approached the driver's side of the vehicle while Officer Whitt approached the passenger side. Officer McCloud identified Robinson as the driver

---

3. It was dark and very cold outside at the time of the stop.

Case No. 2025-L-133

and Reichert as the front seat passenger. Officer McCloud asked Robinson and Reichert whether there were any weapons or drugs inside the vehicle. According to Officer McCloud, as Reichert was informing officers about the two firearms, his flashlight illuminated the two Springfield pistols inside the vehicle. The firearms were next to Reichert's left thigh. According to Officer McCloud the pistols were sitting "directly on top of each other. The barrels were facing towards the dashboard . . . both pistols were facing toward [Robinson]." Officer Whitt was unable to see the firearms from his position on the other side of the vehicle.

{¶17}    Officer McCloud also observed a bag of a green-leafy substance identified as suspected marijuana sitting directly in front of the pistols. Reichert testified that she told officers about the firearms at the time of the stop and that her license would come back suspended. According to Officer McCloud, Robinson did not have his driver's license. He alternatively used Robinson's social security number to run a license check. Radio Dispatch advised that Robinson also had a suspended license.

{¶18}   Officer McCloud said that he ordered both occupants to exit the vehicle. Reichert stood off to the side with Officer Whitt. When Reichert exited the vehicle, Officer Whitt was able to see the firearms. Robinson was instructed to stand in front of Officer McCloud's cruiser. As Reichert exited the vehicle, the magazine for the 10mm was seen on the passenger seat. Officer McCloud indicated that the magazine was loaded with ammunition.

{¶19}   Officer McCloud testified that Reichert appeared physically shaken, nervous, and her voice was "crackled" and changing pitch. According to Officer McCloud, Reichert was looking back and forth between him and Robinson. Officer McCloud testified

Case No. 2025-L-133

he "had a feeling" that Reichert was scared to talk around Robinson, so he had Reichert sit in Officer Taylor Prugel's cruiser. Robinson was then placed in Officer Whitt's cruiser. According to Officer McCloud, Reichert appeared more comfortable and talked more once Robinson was placed in the cruiser. Officer McCloud stated that Reichert was the owner of the firearms and that she was permitted to have them. Robinson was not permitted to have possession of a firearm. Officer McCloud explained that possession meant a firearm could not be in Robinson's immediate reach with ammunition ready at hand.

{¶20} As there was no valid driver, Officer McCloud said that the vehicle would be impounded in accordance with the towing and release policy of the City of Painesville Police Department. Prior to the vehicle being towed, and in compliance with department policy, officers conducted an inventory search of the vehicle for any items of value.

{¶21} Officer Whitt and Officer Chad Balausky ("Balausky") assisted with the inventory search of the vehicle. During the inventory search of the vehicle, one additional unspent 10mm round was discovered on the passenger floorboard of the vehicle. Under the driver's seat, officers discovered a digital scale inside its packaging. The scale contained a white powdery substance on the weighing portion of the scale. Officer McCloud stated that the powder was suspected cocaine. Officer Whitt said that Robinson admitted that the scale was his and that he had recently purchased it at the Grab-n-Go convenient store an hour earlier. According to Officer Whitt, Robinson also confessed that he touched the firearm when it was falling and that his DNA would be on it. Robinson also told Officer Whitt that the bag of marijuana was his property.

{¶22} A technical leader in the firearms and latent fingerprint sections of the Lake County Crime Lab, Becca Silverstein ("Silverstein"), testified that she received the two

Case No. 2025-L-133

firearms for testing as well as the digital scale. Silverstein stated that she first processed the firearms for latent prints. No latent prints were suitable for comparison on either item. Silverstein also tested the firearms for operability. Both firearms were operable.

{¶23} Lake County Crime Lab forensic analyst, Brian Marosan ("Marosan"), testified that he tested the residue discovered on the digital scale. The substances contained cocaine residue. The amount of residue was not enough to be weighed.

{¶24} Lake County Crime Lab DNA Supervisor, Dr. Karen Zavarella ("Dr. Zavarella") testified the two firearms were tested for DNA. Dr. Zavarella said that the swabs from the 10mm caliber firearm had a mixture of a minimum of three contributors. It was compared to a DNA standard from a cheek swab on Robinson. Dr. Zavarella testified that the DNA mixture from the 10mm firearm was "six point seven billion times more likely to occur if the mixture consist[ed] of DNA from Lorenzo Robinson and two unidentified contributors, than if it derives from three unknown contributors." Dr. Zavarella testified that the mixture on the 9mm firearm consisted of a minimum of five contributors and that she could not make any comparisons because of the complexity of the mixture. Dr. Zavarella explained that no comparisons were made.

{¶25} On September 5, 2025, at the conclusion of the trial, the jury convicted Robinson of Count 1 and Count 3. The jury found Robinson not guilty of Count 2. Bond was revoked. A presentence investigation ("PSI") and drug and alcohol evaluations were ordered.

{¶26} A sentencing hearing was held on October 10, 2025. At the hearing, defense counsel acknowledged that the PSI was not completed and requested community control sanctions. Robinson, when given the opportunity to speak to the court

averred that he did not "do anything wrong." The State argued for a prison term and cited that Robinson had "been to prison several times before." According to the State, Robinson had a history of being uncooperative and was not amenable to community control.

{¶27} The trial court concluded that a prison sentence was "consistent with the purposes and principles of sentencing" and found that Robinson was "not amenable to an available community control sanction." The trial court imposed a prison term of 30 months on Count 1 to be served concurrently to the six-month term imposed on Count 2. The trial court additionally ordered the forfeiture of a Springfield Armory XDM Elite pistol, magazine, ammunition, cocaine, and a digital scale.

{¶28} Robinson appeals.

### The Appeal

{¶29} Robinson raises four assignments of error for review:

> [1.] The trial court erred when it denied [Robinson]'s Motion to Suppress Evidence.
>
> [2.] The jury's finding of guilt and Robinson's subsequent conviction for violation of Having Weapons While Under Disability (F-3) was contrary to the manifest weight of the evidence; therefore, Robinson's conviction for said counts should be overturned, and Robinson should be remanded to the trial court for a new trial.
>
> [3.] The Court's denial of [Robinson]'s Rule 29 Motion should be overturned, and Robinson should be remanded to the trial court for a new trial.
>
> [4.] The trial court erred in its October 15, 2025 Judgment Entry of Sentence because its sentence was contrary to law and an abuse of discretion.

Case No. 2025-L-133

**Motion to Suppress**

{¶30} "Appellate review of a motion to suppress presents a mixed question of law and fact." *State v. Burnside*, 2003-Ohio-5372, ¶ 8. "[T]he trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses." *Id.,* citing *State v. Mills*, 62 Ohio St.3d 357, 366. We must accept the trial court's findings of fact if they are supported by competent, credible evidence, and then independently decide whether those facts satisfy the applicable legal standards without deference to the trial court's decision. *Id.* "Once an appellate court determines whether the trial court's factual findings are supported by the record, the court must then engage in a de novo review of the trial court's application of the law to those facts*." State v. Eggleston*, 2015-Ohio-958, ¶ 18 (11th Dist.), citing *State v. Lett*, 2009-Ohio-2796, ¶ 13 (11th Dist.). Accordingly, we first determine whether the lower court's factual findings are supported by the record.

{¶31} At the suppression hearing, defense counsel indicated that Robinson was challenging the stop and the subsequent search of the vehicle. The State presented one witness and introduced five exhibits. The following testimony was presented at the suppression hearing:

{¶32} Officer McCloud was working the nightshift on the north side of the city on January 31, 2025. Officer McCloud testified that he was patrolling the area of Courtland Street and Nebraska Street, a known high-crime area. It was cold and "very lightly snowing." Just before 11 o'clock in the evening, as Officer McCloud travelled southbound on Courtland Street, he observed a black Chevrolet Trax travelling in the opposite direction.

{¶33} Officer McCloud observed the driver had a black face mask that covered the entire face and that the driver sunk down in the seat as the vehicle passed. Officer McCloud said, based on his training and experience, the behavior of the driver was indicative of individuals attempting to avoid police contact. Due to the face mask, Officer McCloud stated that he could not identify any of the driver's characteristics. Officer McCloud further indicated that at the time the vehicle passed he did not see whether there was a passenger inside. Officer McCloud explained that the behavior of the driver, sinking down in the seat as the vehicles passed by, drew his attention to the vehicle. Officer McCloud ran the license plate of the vehicle through LEADS.

{¶34} The license plate check identified the owner of the vehicle as Reichert. Officer McCloud also learned that Reichert had a suspended driver's license. Officer McCloud turned his vehicle around to get behind Reichert's vehicle. Due to the face mask, Officer McCloud testified he could not identify the driver as Reichert.

{¶35} As the vehicle approached the intersection of Nebraska and Richmond Street, Officer McCloud then observed that the right rear brake light was broken. Officer McCloud initiated a traffic stop for the equipment violation. Officer McCloud explained that his cruiser is equipped with a mounted WatchGuard camera that begins recording when the officer activates the cruiser's overhead lights. The officers are also equipped with a body-worn microphone. The dashcam recording was admitted as State's Exhibit 1. When Officer McCloud approached the vehicle, the driver had a black face mask covering the lower half of his face and was wearing a black sweatshirt with the hood pulled up over his head. Officer McCloud identified the driver of the vehicle as Robinson and the front seat passenger as Reichert.

Case No. 2025-L-133

{¶36} Officer McCloud testified that as a common practice, he asks everyone if there is anything illegal in the car, such as guns, knives, and drugs. According to McCloud, as Reichert began to explain that two pistols were inside the vehicle, his flashlight illuminated the interior of the vehicle and two black pistols were near Reichert's left leg. The pistols were stacked on top of each other with the barrels of the pistols pointed toward the dashboard and the magazine wells facing Robinson. The magazines were missing from the pistols. Officer McCloud also identified a bag of green-leafy substance in front of the pistols as suspected marijuana.

{¶37} Officer McCloud testified that he ordered Reichert and Robinson to exit the vehicle for officer safety. After the occupants were removed from the vehicle. Officer McCloud confirmed that neither Robinson nor Reichert had a valid driver's license. Officer McCloud stated that, according to Painesville Police Department policy, the vehicle was required to be towed and impounded. When a vehicle is impounded, officers are required, per department policy, to conduct an inventory search of the vehicle for any items of value or contraband. During the inventory search of the vehicle, Officers Balausky and Whitt located a digital scale in a box underneath the driver's seat of the vehicle that had a white powdery substance on it and an ejected 10mm round on the passenger floorboard of the vehicle. At the time of the stop, Robinson was cited for the rear light illumination violation, driving under suspension, and no operator's license.

{¶38} At the conclusion of the hearing, the trial court overruled Robinson's motion to suppress. Specifically, the trial court determined that the officer's attention was drawn to the vehicle when he observed the driver passing him. The driver was slumped down in the seat with a mask covering most of the driver's face. The officer was unable to

Case No. 2025-L-133

determine any identifiable features about the driver. While this behavior did not provide a basis for the stop, the officer then conducted a permissible registration check of the vehicle and discovered the vehicle was registered to a Stacy Reichert who was under suspension and did not have a valid license. The officer further observed that the rear taillight of the vehicle was broken. The trial court determined that the light was broken based on the video and photographs. The trial court concluded that the officer was permitted to make a lawful stop of the vehicle for the equipment violation and to determine whether the driver was the owner of the vehicle.

{¶39} The trial court also explained that once the vehicle was stopped, and the officer identified that the driver was not the owner of the vehicle, the officer was permitted to request the information from the driver, Robinson. Robinson also had a suspended drvier's license. As there was no person with a valid license able to operate the vehicle, the officer was permitted to tow the vehicle. The trial court also determined that pursuant to the Painesville Police Department policy, officers were required to tow the vehicle because it was a traffic hazard and because Reichert was cited under the City's provision of negligent entrustment of a vehicle. The trial court further found that the officers were required to conduct an inventory search of the vehicle pursuant to the police department's policy which led to the discovery of the scale.

{¶40} Upon review of the trial court's factual findings, we conclude that the findings are supported by competent, credible evidence in the record. As such, we now independently decide whether those facts satisfy the applicable legal standards without deference to the trial court's decision.

Case No. 2025-L-133

{¶41} Robinson asserts that the stop of the vehicle was unlawful and raises two main claims in support of his assignment of error that the trial court erred when it denied his motion to suppress. First, Robinson argues that "Officer McCloud knew and/or should have known that Reichert . . . was not the operator of said vehicle as she is a white female and Robinson is a black male." Second, Robinson asserts that one of the taillights was working, and therefore, Officer McCloud had no basis to stop the vehicle under R.C. 4513.05(A).

{¶42} The Fourth Amendment to the United States Constitution guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures ...." U.S. Const., amend. IV. Article I, Section 14 of the Ohio Constitution is virtually identical to the language in the United States Constitution and affords the same protections. *State v. Hoffman*, 2014-Ohio-4795, ¶ 11. "The touchstone of both is reasonableness." *State v. Brown*, 2020-Ohio-5140, ¶ 8 (11th Dist.), citing *State v. Michael*, 2013-Ohio-3889, ¶ 10 (10th Dist.).

{¶43} "[S]earches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." (Footnotes omitted.) *State v. Vance*, 2026-Ohio-876, ¶ 28 (11th Dist.), quoting *Katz v. United States*, 389 U.S. 347, 357 (1967). "When a defendant moves to suppress evidence recovered during a warrantless search, the state has the burden of showing that the search fits within one of the defined exceptions to the Fourth Amendment's warrant requirement." *State v. Banks-Harvey*, 2018-Ohio-201, ¶ 18. Evidence obtained by searches and seizures that

Case No. 2025-L-133

violate the Fourth Amendment must be excluded. *State v. Adams*, 2015-Ohio-3954, ¶ 181, citing *Mapp v. Ohio*, 367 U.S. 643 (1961).

{¶44} As this court explained in *Vance*, "[t]he constitutionality of a traffic stop should be assessed in a manner similar to that of a brief detention under *Terry v. Ohio*, 392 U.S. 1 (1968), rather than a formal arrest." *Vance* at ¶ 30, citing *State v. Dunlap*, 2024-Ohio-4821, ¶ 16. "[P]ursuant to Terry ..., a police officer may, under limited circumstances, detain an individual and conduct a brief investigative stop." *State v. Gray*, 2000 WL 973411, *2 (11th Dist. July 14, 2000). Therefore, to initiate or continue a traffic stop, as with a *Terry* stop, "an officer must have at least a reasonable articulable suspicion of criminal activity based on 'articulable facts that give rise to a reasonable suspicion that the individual is currently engaged in or is about to engage in criminal activity.'" *Vance* quoting *Gray*.

{¶45} Robinson first contends that Officer McCloud lacked reasonable suspicion or probable cause to initiate a traffic stop based on the vehicle registration information that Reichert, the vehicle's owner, had a suspended driver's license. We disagree.

{¶46} The Supreme Court of Ohio has held that whether an officer had a reasonable suspicion to justify the investigative stop "must be viewed in light of the totality of the surrounding circumstances." *State v. Bobo*, 37 Ohio St.3d 177 (1988), paragraph one of the syllabus. In *State v. Dunlap*, 2024-Ohio-4821, the Supreme Court of Ohio held that an officer had reasonable suspicion to make a traffic stop after running a vehicle's license plate and learning that the registered owner had a revoked driver's license. *Dunlap* at ¶ 17. In *Dunlap*, the officer sat in a parking lot running random registration checks on the license plates of passing vehicles. *Id.* at ¶ 4.

Case No. 2025-L-133

{¶47} After running a check on one of the vehicles, the officer discovered that the female owner had a suspended driver's license. The officer initiated a traffic stop. After the officer approached the vehicle, the officer realized that the owner of the vehicle was not the driver, but was a passenger. The officer then discovered that the male driver also had a suspended license. As neither the owner nor the driver had a valid driver's license and the vehicle was going to be towed, an inventory search of the vehicle was conducted. The search revealed an unloaded firearm located in the vehicle, and both the driver and the owner were charged with improper handling of a firearm in a motor vehicle.

{¶48} The *Dunlap* Court recognized:

> The United States Supreme Court has recently made clear that an officer does not violate the Fourth Amendment "by initiating an investigative traffic stop after running a vehicle's license plate and learning that the registered owner has a revoked driver's license,"[*Kansas v. Glover*, 589 U.S. 37 (2020)] at 378. . . . Such a stop is reasonable as long as "the officer lacks information negating an inference that the owner is the driver of the vehicle." Id. Thus, Officer Centrackio was entitled to make the traffic stop based on the information acquired from LEADS indicating that the owner of the vehicle did not have a valid driver's license.

*Dunlap* at ¶ 17.

{¶49} Similarly, Officer McCloud decided to run a registration check on the vehicle after observing the driver of the vehicle wearing a face mask and slouching down as the cruiser passed the vehicle in the opposite direction. Due to the face mask and time of the evening, Officer McCloud could not see any identifiable features of the driver. Officer McCloud testified he could not determine if the driver was male or female. Officer McCloud then discovered through LEADS that the registered owner of the vehicle, Reichert, had a suspended driver's license. As such, in accordance with the holding in

Case No. 2025-L-133

*Dunlap,* Officer McCloud had reasonable suspicion to stop the vehicle as the officer had no information to negate the inference that the owner of the vehicle was driving at the time of the stop.

{¶50} As Officer McCloud had reasonable suspicion to stop the vehicle, we need not address whether Officer McCloud had probable cause to stop the vehicle for the equipment violation. It was undisputed and is uncontested on appeal that the right rear taillight was broken. Instead, Robinson argues that the officer did not have sufficient basis for the equipment violation because R.C. 4513.05 and City of Painesville Codified Ordinance 338.04 only require one working brake light.

{¶51} The State contends that even if R.C. 4513.05 required only a single working light, Officer McCloud had probable cause to stop the vehicle pursuant to R.C. 4513.071 which provides in pertinent part:

> Every motor vehicle . . . when operated upon a highway shall be equipped with two or more stop lights. . . Stop lights shall be mounted on the rear of the vehicle, actuated upon application of the service brake, and may be incorporated with other rear lights. Such stop lights when actuated shall emit a red light visible from a distance of five hundred feet to the rear, provided that in the case of a train of vehicles only the stop lights on the rear-most vehicle need be visible from the distance specified.
>
> Such stop lights when actuated shall give a steady warning light to the rear of a vehicle or train of vehicles to indicate the intention of the operator to diminish the speed of or stop a vehicle or train of vehicles.

{¶52} Indeed, this court has held that the constitutionality or legality of the initial traffic stop is not affected where the officer cites the defendant under the wrong statute. This court explained:

Case No. 2025-L-133

The fact that Officer Smith cited appellant for a violation of R.C. 4511.25, instead of R.C. 4511.33, does not affect the constitutionality of the initial traffic stop. This court has previously held that a traffic stop was valid even though the police officer mistakenly cited the defendant with a marked lanes violation, rather than a failure to drive on the right side of the roadway (*i.e.,* left of center). See *State v. Lillstrung* (Sept. 18, 1998), Lake App. No. 97-L-290, unreported, at 10-14, 1998 Ohio App. LEXIS 4374. See, also, *Mason v. Rischar* (Aug. 21, 1995), Warren App. No. CA94-08-072, unreported, at 2, fn. 1, 1995 Ohio App. LEXIS 3411 (holding that no prejudice resulted when a police officer mistakenly listed R.C. 4511.25, instead of R.C. 4511.33, as the section number on a traffic citation for driving outside the marked lanes of travel).

*State v. Carleton,* 1998 WL 964286, *4 (11th Dist. Dec. 18, 1998). *See State v. Webb*, 2016-Ohio-4896, ¶ 11 (2d Dist.); *State v. Jackson*, 2015-Ohio-5160, ¶ 9 (6th Dist.). Accordingly, in addition to the reasonable suspicion to stop the vehicle to determine if the suspended registered owner of the vehicle was driving, Officer McCloud also had probable cause to stop the vehicle due to an equipment violation.

{¶53} As outlined above, the trial court's factual findings are supported by the record, and the trial court properly applied the law to those facts. The trial court did not err in denying Robinson's motion to suppress. The stop of the vehicle was lawful. Accordingly, the firearms which were in plain view and identified by Reichert at the time of the stop were lawfully discovered. Furthermore, the subsequent inventory search of the vehicle, which led to the discovery of the digital scale with cocaine residue on the surface, was also permissible pursuant to police department policy.

{¶54} Accordingly, Robinson's first assignment of error is without merit.

### Manifest Weight/Sufficiency of Evidence

{¶55} On appeal, where an appellant challenges both the sufficiency and the manifest weight of the State's evidence, the appellate court need only address the

manifest weight argument. *See State v. Dykes*, 2023-Ohio-4378, ¶ 6 (11th Dist.), quoting *State v. Masters*, 2020-Ohio-864, ¶ 17 (11th Dist.). The determination that a verdict is not against the manifest weight necessarily includes a finding that the conviction was supported by sufficient evidence. *Id.* Thus, we address Robinson's second and third assignments of error together.

{¶56} "[W]eight of the evidence addresses the evidence's effect of inducing belief." *State v. Wilson*, 2007-Ohio-2202, ¶ 25, citing *State v. Thompkins*, 1997-Ohio-52, ¶ 24. "In other words, a reviewing court asks whose evidence is more persuasive—the state's or the defendant's?" *Id.* "'The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [factfinder] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *Thompkins* at ¶ 25, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983). "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a '"thirteenth juror"' and disagrees with the factfinder's resolution of the conflicting testimony." *Id*., quoting *Tibbs v. Florida*, 457 U.S. 31, 42 (1982). "'The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.'" *Id*., quoting *Martin* at 175.

{¶57} Robinson was convicted of having weapons under disability, a felony of the third degree, in violation of R.C. 2923.13(A)(3) and possession of cocaine, a felony of the fifth degree, in violation of R.C. 2925.11. However, on appeal, Robinson only raises a

manifest weight and sufficiency challenge to his conviction of having weapons under disability. Therefore, we limit our analysis accordingly.

{¶58}  R.C. 2923.13(A)(3) provides:

> (A) Unless relieved from disability under operation of law or legal process, no person shall knowingly acquire, have, carry, or use any firearm or dangerous ordnance, if any of the following apply:
>
> . . .
>
> (3) The person is under indictment for or has been convicted of any felony offense involving the illegal possession, use, sale, administration, distribution, or trafficking in any drug of abuse or has been adjudicated a delinquent child for the commission of an offense that, if committed by an adult, would have been a felony offense involving the illegal possession, use, sale, administration, distribution, or trafficking in any drug of abuse.

{¶59}  Robinson argues on appeal that the State failed to present sufficient evidence that Robinson had control or possession of the firearms. Additionally, Robinson argues that the conviction of having weapons under disability is against the manifest weight of the evidence. Specifically, Robinson asserted that "the two firearms found in the vehicle were registered to and under the sole control/possession of Reichert, who had no disability preventing her from possessing the weapons." We disagree.

{¶60}  After reviewing the record and considering the evidence adduced at trial, and all reasonable inferences therefrom, witness credibility, and the conflicts in the evidence or lack thereof, we do not believe that the jury clearly lost its way so as to create a manifest miscarriage of justice. As Robinson's convictions are not against the weight of the evidence, the convictions are necessarily supported by sufficient evidence.

{¶61}  Specifically, Robinson and Reichert were aware that Robinson was prohibited by law from having a firearm due to a prior conviction. At the time of the traffic

Case No. 2025-L-133

stop, two firearms were inside the vehicle within reach of Robinson in the passenger compartment. Testimony revealed that the magazine wells of the firearms were leaning in Robinson's direction in the vehicle and that the barrels were pointed toward the dashboard. The magazine for the 10mm firearm was on the passenger seat and within reach of Robinson. An unspent 10mm round was found on the passenger floorboard. Testimony by Reichert revealed that Robinson indeed handled the 10mm firearm, even if briefly, to ensure the firearm did not fall out of Reichert's pocket.

{¶62} As this court previously explained:

> In order to "have" a weapon, one must either actually or constructively possess it. There was no evidence that appellant actually possessed the firearms at the time of the arrest. As such, the state was required to prove that appellant exercised constructive possession over the firearms. "Constructive possession exists when an individual exercises dominion and control over an object, even though the object may not be within his immediate physical possession." *State v. Wolery*, 46 Ohio St.2d 316, 329, 348 N.E.2d 351 (1976).

> In the current matter, the state offered evidence that the vehicle in which the firearms were found was being operated by [appellant] at the time of the stop. The state offered testimony * * * that the firearms were "ready at hand" or within appellant's access. It has been held that mere access to a weapon can establish guilt . . . Under these circumstances, a rational trier of fact could conclude that appellant had constructive possession of the firearms, i.e., he was able to exercise dominion and control over them. We conclude that the state presented sufficient evidence to support the conviction for having weapons under disability.

*State v. Burgess*, 2004-Ohio-3338, ¶ 40-41 (11th Dist.). Accordingly, when a firearm is "ready at hand" or accessible to an individual under disability it is constructively possessed to satisfy the provisions of R.C. 2923.13(A)(3).

Case No. 2025-L-133

{¶63} Relying on *Burgess,* this court has further explained "where the state presents evidence that the defendant was operating a motor vehicle in which firearms were found and those firearms were ready at hand or within the defendant's access, a rational jury may infer constructive possession, i.e., that the defendant was able to exercise dominion and control over them." *State v. Teague*, 2012-Ohio-983, ¶ 52 (11th Dist.). In *Teague*, the defendant drove his accomplices away from a robbery. The accomplices were still armed with their guns. The van was stopped by law enforcement less than eight minutes later. Two loaded handguns were within appellant's reach, one of which was right next to him, at the time of the stop. This court held that "the jury could reasonably infer that appellant was aware of the presence of both guns in the van and that he was able to exercise dominion and control over them, i.e., that he had constructive possession of them." *Teague* at ¶ 53.

{¶64} Robinson asserts that he did not own them and that the firearms were in Reichert's control. The State did not have to prove ownership of the firearm. Moreover, even if the firearms were accessible to Reichert and in her area of control, that does not mean that the firearms were not also accessible to Robinson. *See Teague* at ¶ 54. Furthermore, at the time of the stop and at trial, Reichert stated that Robinson handled the firearm. According to Reichert at trial, the firearm was in her pocket and began to fall out. Robinson grabbed the firearm and subsequently returned the firearm to Reichert. After it was returned to her, Reichert unloaded the firearm, placing the magazine under her leg and putting the firearm between her and Robinson in the vehicle. DNA consistent with Robinson was also found on the 10mm pistol. At the time of the trial, Reichert

indicated that she and Robinson were living together and travelled to the courthouse together.

{¶65} Thus, after reviewing the record and considering the evidence adduced at trial, and all reasonable inferences therefrom, witness credibility, and the conflicts in the evidence or lack thereof, we do not believe that the jury clearly lost its way so as to create a manifest miscarriage of justice. We conclude that the State met its burden of persuasion as to the charge. As Robinson's conviction is not against the weight of the evidence, the conviction is necessarily supported by sufficient evidence.

{¶66} As such, Robinson's second and third assignments of error are without merit.

**Sentencing**

{¶67} In his fourth assignment of error, Robinson asserts that his sentence is contrary to law. Specifically, he claims that the trial court "did not actually consider all of the R.C. 2929.12(C) factors." According to Robinson, "[t]he fact that Robinson was sentenced to thirty (30) months (six (6) months less of the maximum sentence) on the Weapons Under Disability charge suggests that the Court did not consider Robinson's conduct "less serious". Robinson asserts that the trial court should have imposed a lesser sentence. We disagree.

{¶68} We review felony sentencing pursuant to R.C. 2953.08(G)(2). *State v. Lamb*, 2023-Ohio-2834, ¶ 9 (11th Dist.). After an appellate court reviews the record and sentence on appeal, the court "may increase, reduce, or otherwise modify a sentence that is appealed under this section or may vacate the sentence and remand . . . if it clearly and convincingly finds . . . [t]hat the sentence is . . . contrary to law." R.C.

2953.08(G)(2)(b). "'A sentence is contrary to law when it does not fall within the statutory range for the offense or if the trial court fails to consider the purposes and principles of felony sentencing set forth in R.C. 2929.11 and the sentencing factors set forth in R.C. 2929.12.'" *State v. Shannon*, 2021-Ohio-789, ¶ 11 (11th Dist.), quoting *State v. Brown*, 2017-Ohio-8416, ¶ 74 (2d Dist.).

{¶69} "The Supreme Court of Ohio has held that while 'R.C. 2953.08(G)(2)(a) permits an appellate court to modify or vacate a sentence if it clearly and convincingly finds that "the record does not support the sentencing court's findings under" certain specified statutory provisions. But R.C. 2929.11 and 2929.12 are not among the statutory provisions listed in R.C. 2953.08(G)(2)(a). Only R.C. 2929.13(B) and (D), 2929.14(B)(2)(e) and (C)(4), and 2929.20(I) are specified.'" *State v. Feidler*, 2024-Ohio-2040, ¶ 10 (11th Dist.), *appeal not accepted*, 2024-Ohio-4501, quoting *State v. Jones*, 2020-Ohio-6729, ¶ 28. Accordingly, "R.C. 2953.08(G)(2)(b) . . . does not provide a basis for an appellate court to modify or vacate a sentence based on its view that the sentence is not supported by the record under R.C. 2929.11 and 2929.12." *Jones* at ¶ 31.

{¶70} Robinson was convicted of having weapons while under disability, a felony of the third degree, and possession of cocaine, a felony of the fifth degree. R.C. 2923.13(B); R.C. 2925.11 (C)(4)(a).

{¶71} The statutory terms are outlined as follows:

> For a felony of the third degree that is not an offense for which division (A)(3)(a) of this section applies, the prison term shall be a definite term of nine, twelve, eighteen, twenty-four, thirty, or thirty-six months.

R.C. 2929.14(A)(3)(b).

> For a felony of the fifth degree, the prison term shall be a definite term of six, seven, eight, nine, ten, eleven, or twelve months.

R.C. 2929.14(A)(5).

{¶72} Robinson's sentences are within the statutory range for the offenses. Robinson does not dispute that the trial court specifically mentioned both R.C. 2929.11 and R.C. 2929.12. Indeed, the trial court stated at the sentencing hearing and in its judgment entry that it considered the purposes and principles of sentencing and the recidivism and seriousness factors.

{¶73} At the sentencing hearing, the trial court explained it considered both R.C. 2929.11 and 2929.12. Specifically, the trial court stated in pertinent part:

> As for the factors in 2929.12, nothing stands out factually indicating it's more or less serious. This Court is not required to adopt the defense's version of what happened in this case in terms of why he may have been in possession. Though he completely denies it. He said he didn't do anything wrong. But I'm not required to take their version of this and make this finding that, taking their version this is less serious than normal. I heard all the evidence and in my view the jury came up with the correct verdict.
>
> All of this is being considered however in light of the purposes and principles of sentencing.
>
> Nothing makes it more serious. Nothing makes if less serious.
>
> As for recidivism factors, many of these factors are present.

{¶74} The sentencing entry provides in relevant part:

> The Court has considered the record, oral statements, the incomplete presentence report/and or drug and alcohol evaluation submitted by the Lake County Adult Probation Department of the Court of Common Pleas, as well as the principles and purposes of sentencing under R.C. 2929.11 and has balanced the seriousness and recidivism factors under R.C. 2929.12.

{¶75} Robinson argues that the trial court should have given him a lesser sentence. Robinson is asking this court to reweigh the evidence and determine that his sentences are inconsistent with R.C. 2929.11 and 2929.12. Pursuant to *Jones*, this court is not permitted to do so. "[T]he competing factors in R.C. 2929.11 and 2929.12 are for the sentencing court to weigh, not the court of appeals." *State v. Stanley,* 2021-Ohio-549, ¶ 12 (11th Dist.) citing *Jones*, 2020-Ohio-6729, at ¶ 12. Moreover,

> [a] 'trial court is not required to give any particular weight or emphasis to a given set of circumstances; it is merely required to consider the statutory factors in exercising its discretion.' *State v. DelManzo*, 2008-Ohio-5856, ¶ 23 (11th Dist.). A sentencing court fulfills its duties under R.C. 2929.11 and 2929.12 by stating that it considered them. *State v. DeLuca*, 2021-Ohio-1007, ¶ 18 (11th Dist.).

*State v. Miller*, 2025-Ohio-339, ¶ 21 (11th Dist.).

{¶76} Here, the trial court imposed a sentence within the statutory guidelines for each offense. The court below stated that it considered the purposes and principles of sentencing and the seriousness and recidivism factors. This court is not permitted to independently reweigh the competing factors on appeal or review whether the record supports the imposition of a prison term greater than the minimum prison sentence provided by statute or rather than community control. *See State v. Hall*, 2025-Ohio-5281, ¶ 24 (11th Dist.). Thus, Robinson's sentences are not clearly and convincingly contrary to law.

{¶77} Accordingly, Robinson's final assignment of error is without merit.

Case No. 2025-L-133

**Conclusion**

{¶78} Accordingly, the judgment of the Lake County Court of Common Pleas is affirmed.


MATT LYNCH, P.J.,

JOHN J. EKLUND, J.,

concur.

# JUDGMENT ENTRY

For the reasons stated in the opinion of this court, appellant's assignments of error are without merit. It is the judgment and order of this court that the judgment of the Lake County Court of Common Pleas is affirmed.

Costs to be taxed against appellant.



JUDGE ROBERT J. PATTON

PRESIDING JUDGE MATT LYNCH,
concurs

JUDGE JOHN J. EKLUND,
concurs

---

**THIS DOCUMENT CONSTITUTES A FINAL JUDGMENT ENTRY**

A certified copy of this opinion and judgment entry shall constitute the mandate pursuant to Rule 27 of the Ohio Rules of Appellate Procedure.

---

Case No. 2025-L-133